

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-24-2007

# USA v. Paczan

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2106

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Paczan" (2007). *2007 Decisions*. Paper 1228.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1228

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NON-PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Case No: 06-2106


UNITED STATES OF AMERICA

v.

JENNIFER PACZAN,

Appellant

_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 05-cr-00217-2
District Judge: Honorable Alan N. Bloch


_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 11, 2007

Before: SMITH,  NYGAARD, and HANSEN,* Circuit Judges

(Filed: April 24, 2007)


---

*The Honorable David R. Hansen, Senior Circuit Judge of the United States Court
of Appeals for the Eighth Circuit, sitting by designation.

———————

OPINION

———————

HANSEN, *Circuit Judge*.

In this direct criminal appeal, Jennifer Paczan challenges the District Court's denial of her ex parte application for authorization of expert and investigative services pursuant to 18 U.S.C. § 3006A(e)(1), and appeals her sentence as unreasonable. Because this is a non-precedential opinion and we write only for the benefit of the parties, our factual recitation is brief.

A grand jury returned a three-count indictment against Paczan, charging one count of conspiracy to manufacture less than five grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of possession of acetone with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1); and one count of possession of equipment, chemicals, products, and materials with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6) and (d)(2). The evidence at trial established that Paczan was involved in a methamphetamine manufacturing conspiracy from December 2004 through February 2005.

In February 2005, law enforcement authorities executed a search warrant at an apartment occupied by Christopher Burkholder and Gene Luff, after receiving information that they were operating a methamphetamine laboratory from their third-floor apartment. During the search, Burkholder advised the law enforcement officers of another

2

methamphetamine laboratory operated on the second floor of the same building in an apartment occupied by Lance Baird and Jennifer Paczan, with whom he had shared methamphetamine and offered advice on manufacturing methamphetamine. When questioned, Baird denied the allegations and consented to a search of the apartment he shared with Paczan.

Burkholder advised the officers to search under the kitchen sink, above the refrigerator, and in a closet of Baird and Paczan's apartment, where he had seen them store their methamphetamine manufacturing apparatus. Agents seized numerous ingredients and materials used in the manufacture of methamphetamine from these locations, including Red Devil lye, acetone, denatured alcohol, lab-grade iodine, mason jars, empty pill capsules, a plastic container holding a white paper towel and gray sludge, razor blades, cut straws, weighing dishes, filters, tubing, pH strips, and a turkey baster. They also found an expensive hot plate and digital scale that belonged to Carlow University, where Paczan had been a biology student. The inventory stickers indicating Carlow's ownership of the equipment had been partially scraped off.

Chemical analysis revealed the presence of substances consistent with the production of methamphetamine. A computer forensics special agent examined the computer hardware on Paczan's laptop computer and found multiple files containing information downloaded from the Internet related to the manufacture of methamphetamine.

Paczan offered innocent explanations for the presence of the methamphetamine manufacturing chemicals and paraphernalia found in her apartment. The Red Devil lye was

3

used for plumbing problems in the bathroom, the gallon can of acetone was used to remove acrylic fingernails, the pH paper, weighing dishes, and tubing were together in a box in the closet because of a lack of kitchen drawers and they were used to care for the fish tanks, and she used the gallon can of denatured alcohol to clean up pet odors. Paczan testified that she did not steal the hot plate and digital scale from Carlow University but borrowed them for a school project and to make candles. She testified that Baird was using the cut straws and razor blades to crush and snort his prescription medication. As to the information found on her computer, she testified that the third-floor neighbors, Burkholder and Luff, had each taken her computer for a couple of days on two separate occasions to repair the wireless card which was not working. She denied knowing that they had been involved in manufacturing methamphetamine.

Paczan moved for and received a continuance of trial from November 15, 2005, to November 28, 2005, to consult with experts regarding the government's chemical analysis and computer forensic evidence. Following trial, the jury returned guilty verdicts against Paczan on all three counts. Paczan then moved for a new trial, asserting that she was deprived of a fair trial by the District Court's denial of her ex parte application for expert witness fees pursuant to 18 U.S.C. § 3006A(e)(1). The District Court denied the motion for a new trial.

At sentencing, the District Court grouped the three counts pursuant to United States Sentencing Guidelines Manual (USSG) § 3D1.2(b) (2005), and applied a two-level adjustment pursuant to USSG § 2D1.12(b)(1). The resulting adjusted base offense level of

14, together with a criminal history category of IV, produced an advisory Guidelines sentencing range of 27 to 33 months. The District Court denied Paczan's request for a downward departure, *see* USSG § 4A1.3(b), concluding that her criminal history category did not substantially over represent the seriousness of her criminal history. Ultimately, the District Court imposed a sentence of 33 months of imprisonment, which is the high end of the advisory Guidelines range.

Paczan appeals the denial of her ex parte application for authorization of expert and investigative services under § 3006A(e)(1) and appeals her sentence as unreasonable.

## I.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"The decision to grant or deny a motion under section 3006A(e) is one committed to the discretion of the district court, and a district court's decision will be disturbed on appeal only if it constitutes an abuse of discretion." *United States v. Roman*, 121 F.3d 136, 143 (3d Cir. 1997), *cert. denied*, 522 U.S. 1061 (1998). We review a District Court's imposition of a criminal sentence for reasonableness. *United States v. Booker*, 543 U.S. 220, 261 (2005). A defendant challenging a sentence as unreasonable bears the burden of establishing unreasonableness. *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006).

## II.

Pursuant to § 3006A(e)(1), funds may be provided to obtain an expert to assist an indigent defendant at trial if the expert's services are necessary for adequate representation.

5

"Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services." 18 U.S.C. § 3006A(e)(1).

The only indication in the record below that Paczan made an ex parte inquiry of the court regarding expert services is the substance of her motion for a new trial. This court granted Paczan's motion to supplement the record on appeal with her attorney's affidavit, stating that prior to trial he had obtained a chemical expert and a computer forensics expert and had submitted to the District Court the necessary CJA 21 authorization forms for each in an ex parte meeting, but the District Court denied the requests. Paczan also supplements the record with two letters from counsel addressed to the District Court referencing the requested experts, accompanied by the completed CJA 21 forms regarding each expert and a curriculum vitae for each. Thus, the record, as supplemented by counsel on appeal, indicates that on the day trial was scheduled to begin, Paczan's attorney made an ex parte application for funds to obtain a chemist/pharmacist and a computer forensic expert, which the District Court denied.

Other than the fine print boiler plate language of the CJA Form 21 authorization forms and the attorney's bare representations therein that the experts would "render opinion and testify as necessary," (Supp. R. Exhibits A & B), Paczan has not demonstrated that the services requested were "necessary" to her adequate defense. 18 U.S.C. § 3006A(e)(1). "[A] court should first satisfy itself that a defendant *may have a plausible defense*." *Roman*, 121 F.3d at 143 (internal marks omitted). Funding authorization is not available for the mere

6

asking or to mount a fishing expedition. "The statute requires the district court judge to authorize defense services when the defense attorney makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having independent means to pay for them." *United States v. Alden*, 767 F.2d 314, 318 (7th Cir. 1984) (internal marks omitted). In our view, the requester must explain to the district judge in some minimal way why the requested services are necessary.

Defense counsel cross-examined the Government's chemical and computer forensics experts without challenging the basis of their expert conclusions. Paczan made no attempt to demonstrate that the chemicals found in the acetone and denatured alcohol containers in her apartment were not in fact what they appeared to be or what the chemist found them to be. Instead, she explained that she had legitimate uses for the chemicals. No chemical expert was necessary to support this defense. Similarly, no computer forensics expert could have demonstrated, in aid of her theory of defense, that someone other than Paczan had accessed the methamphetamine Internet site and downloaded the manufacturing information onto her computer. Absent a demonstration that the experts were necessary to present an adequate defense, and considering the eleventh-hour nature of the requests, we cannot find that the District Court abused its discretion in denying the ex parte applications.

III.

The first step of the sentencing procedure is for the District Court to "calculate the correct guidelines range applicable to a defendant's particular circumstances," because the Sentencing Guidelines "provide a natural starting point for the determination of the

appropriate level of punishment." *Cooper*, 437 F.3d at 330, 331; *see also United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Paczan argues that the District Court abused its discretion in denying her request for a downward departure on the ground that her criminal history score over represented her criminal history record. *See* USSG § 4A1.3(b). As before *Booker*, we decline to review a District Court's decision to deny a departure, absent any allegation of legal error. *Cooper*, 437 F.3d at 332-33. The District Court's refusal to depart was a lawful exercise of its discretion, which we lack jurisdiction to review. *See United States v. Denardi*, 892 F.2d 269, 272 (3d Cir. 1989).

Paczan also asserts that her within-Guidelines sentence of 33 months is unreasonable. Specifically, she asserts that the District Court improperly imposed a sentence at the top of the advisory range upon a finding that she had testified untruthfully. While a sentence within the Guidelines range "is more likely to be reasonable than one that lies outside the advisory guidelines range, a within-guidelines sentence is not necessarily reasonable *per se*." *Cooper*, 437 F.3d at 331. The record in this case reflects, however, "that the district court understood and reasonably discharged its obligation to take all of the relevant factors into account in imposing a final sentence." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc).

In its Tentative Findings and Rulings on Disputed Facts or Factors, adopted at sentencing without further objection, the District Court discussed at length Paczan's characteristics of substance abuse and her related criminal history, noting that the offenses were recent and exhibited a pattern of combining substance abuse with driving. The District

Court recognized that this conduct presents a serious risk of bodily harm to herself and to others, as well as a serious risk of recidivism. When imposing the sentence at the high end of the advisory Guidelines range, the District Court stated, "[t]his sentence not only adequately addresses the seriousness of your offenses, it also takes into account the fact that you testified untruthfully during the trial in this case." (Appellant's App. at 776.) While noting that her conduct could arguably warrant a sentencing enhancement, the District Court instead chose to use that conduct to justify a sentence at the high end of the advisory Guidelines range. This reflects the District Court's reasonable consideration of permissible factors such as the individual's characteristics and a need to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public. *See* 18 U.S.C. § 3553(a). We conclude that Paczan's sentence is reasonable. *See Cooper*, 437 F.3d at 332 (affirming a sentence at the high end of the Guidelines range because the defendant had "not met her burden on appeal of proving the sentence was unreasonable"). Accordingly, we will affirm the judgment of the District Court.